# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RONELL J. COMEAUX

**VERSUS**

KLEINPETER FARMS DAIRY, LLC

CIVIL ACTION

NO. 24-817-JWD-EWD

## <u>RULING AND ORDER</u>

This matter comes before the Court on *Defendant's Motion to Dismiss Brought Pursuant to Rule 12(b)(6)* ("*Motion to Dismiss*" or "*Motion*") (Doc. 13) filed by Kleinpeter Farms Dairy, LLC ("Defendant" or "the Dairy"). Plaintiff Ronell Comeaux ("Plaintiff" or "Comeaux") opposes the motion. (Doc. 19.) Defendant filed a reply. (Doc. 22.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the reasons stated below, the *Motion to Dismiss* is granted in part and denied in part.

## I.   Factual and Procedural Background

The following factual allegations are taken primarily from the *Complaint* (Doc. 1). The well-pled allegations are assumed to be true for purposes of this motion. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

Plaintiff, an African American male, began working at the Dairy on May 3, 2023. (Doc. 1 at 2, 4.) In or around July 2023, Plaintiff began receiving comments about his race from fellow employees. (*Id.* at 2.) Plaintiff's supervisor, Korey Watson ("Watson"), called Plaintiff a "black a__ n____" and made comments about Plaintiff's skin tone. (*Id.*) Watson also said to Plaintiff:

"Good I have more work for you to do right now slave." (*Id.*) McQuirter[1] was present for some of these incidents, and told Plaintiff that he would speak to Watson about the comments. (*Id.*) However, Plaintiff "never heard back about the situation." (*Id.*)

Plaintiff received a phone call on July 12, 2023, threatening "that he would get killed or hurt if he kept reporting what was going on at the job site." (*Id.*) Plaintiff reported this call to Watson, but nothing was done. (*Id.*) Two days after this phone call, Plaintiff was followed by a gray Honda vehicle on his way home from the Dairy. (*Id.*) He reported this incident to McQuirter and Watson. (*Id.*) Again, nothing was done. (*Id.*)

On July 20, 2023, staff at the Dairy threw a birthday party in the lobby for one of Plaintiff's co-workers. (*Id.* at 2–3.) "[Plaintiff] asked why he could not attend[,] and Mr. Watson told [Plaintiff] to pick his black bag off the desk and [that] he could not attend the party because he was blacker than the bag." (*Id.* at 3.)

On August 20, 2023, "Plaintiff was denied a two dollar raise," which Watson said was because Plaintiff was Black. (*Id.*) A few days after this incident, on August 22, 2023, Watson said that Plaintiff had raped a co-worker. (*Id.*)

That day[2], Plaintiff reported the incidents described above to owner Sue Ann Kleinpeter Cox ("Cox") and McQuirter. (*Id.*) Plaintiff was told that he would be fired if he told anyone else about these incidents. (*Id.*) Cox told Plaintiff that "she would take care of things." (*Id.*)

During the months of August and September 2023, "everyone in the plant called Mr. Watson a stitch [sic] daily . . . ." (*Id.*)[3] Co-workers would move the truck Plaintiff was working on

---

[1] Plaintiff does not identify Mr. McQuirter and sometimes refers to him as "Mr. Quirter." For purposes of this ruling, he will be referred to as "McQuirter."

[2] Plaintiff lists this day as "August 22, 2024" (Doc. 1 at 3) but given that Plaintiff's employment at the Dairy ended in 2023, it is likely that this is simply a typographical error.

[3] Presumably Plaintiff means that Watson would, on a daily basis, call Plaintiff a snitch but this is unclear.

so that the milk would spill. (*Id.*) They would alter his invoices so that his orders would be wrong. (*Id.*) Watson threatened Plaintiff "with bodily harm if he kept stitching [sic]." (*Id.*)

On September 12, 2023, Watson, McQuirter, and two other individuals confronted Plaintiff, telling him to stop reporting what was happening. (*Id.*) The next day, Plaintiff's work order sheet contained errors, which he reported to Cox. (*Id.*) She did not discuss conducting any investigation. (*Id.*) "[N]o one told [Plaintiff] they were looking into the allegations." (*Id.* at 3–4.) Plaintiff says that he was "constructively discharged on September 13, 2023." (*Id.* at 4.)

"[P]laintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on February 7, 2024." (*Id.* at 2.) He received the right to sue from the EEOC on July 2, 2024, and he filed suit on October 1, 2024. (*Id.*) Plaintiff asserts multiple claims: racial discrimination, retaliation and constructive discharge, racially hostile work environment, and racial harassment under Title VII of the Civil Rights Act of 1964 and Louisiana's Employment Discrimination Law ("LEDL"), Louisiana Revised Statutes § 23:332. (*Id.* at 4–7.)

## II.    Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Hamilton v. Dall. Cnty*., 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for

relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *MySpace*, 528 F.3d at 418. The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.' " *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.' " *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.' " *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].' " *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam)

(quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

## III.   DISCUSSION

### a.  Parties' Arguments

#### i.   *Motion to Dismiss* (Doc. 13)

Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 13-2 at 1.) It argues that Plaintiff's allegations, other than claims related to pay, are not adverse employment actions. (*Id.*) "Similarly, Plaintiff's allegations of racial harassment, race-based hostile work environment, and retaliation are insufficient to establish a violation of Title VII or the LEDL as a matter of law." (*Id.*)

##### 1.  Racial Discrimination

Defendant argues that Plaintiff has failed to plead "a discriminatory adverse employment action." (*Id.* at 7.) Defendant acknowledges that Plaintiff's claim that he was denied a raise because of his race constitutes an adverse employment action. (*Id.*) Although the Fifth Circuit has expanded the definition of adverse employment action beyond the former "ultimate decision" rule, Defendant contends that Plaintiff's remaining allegations do not meet the current standard. (*Id.*)

Defendant asserts that Plaintiff's exclusion from the birthday party is a "de minimis workplace trifle." (*Id.* at 7–8 (quoting *Johnson-Lee v. Tex. A&M Univ. - Corpus Christi*, 729 F. Supp. 3d 709, 718 (S.D. Tex. 2024)).) Regarding Plaintiff's "allegations of being called racially derogatory names, receiving threatening phone calls, being followed home from work, or being referred to in a derogatory way . . . [,]" Defendant argues that these are not adverse employment

actions. (*Id.* at 8.) He says that they do not rise to the level of a detrimental change to Plaintiff's terms and conditions of employment. (*Id.*)

## 2. Racial Harassment and Race-Based Hostile Work Environment

Defendant argues that Plaintiff's "challenged conduct must be sufficiently severe or pervasive as to create an environment that a reasonable person would find hostile or abusive considering all the circumstances." (*Id.* at 10 (quoting *Beaumont v. Tex. Dep't of Crim. Just.*, 468 F. Supp. 2d 907, 919 (E.D. Tex. 2006)).) It argues that Plaintiff has not shown that the alleged conduct rose to this level. (*Id.*)

First, Defendant contends that some of the incidents which Plaintiff says contributed to the racially hostile work environment were not based on his race—namely, "that [Plaintiff] allegedly received threatening phone calls, that he was allegedly followed home from work, that he was accused of 'raping' a co-worker, that his work was allegedly sabotaged, and that he was allegedly 'cornered by an angry mob.' " (*Id.* at 10–11.) Defendant argues that Plaintiff has not adequately pled "that these incidents occurred because of his race." (*Id.*)

Next, Defendant asserts that the harassment was not severe enough to rise to the level of a hostile work environment. (*Id.* at 11–12.) The actions alleged in the *Complaint* are not "sufficiently severe or pervasive." (*Id.* at 11.)

> Whether conduct is "hostile" or "abusive" depends on the totality of the circumstances including (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the discriminatory conduct is physically threatening or humiliating, or merely an offensive utterance, and (4) whether the discriminatory conduct unreasonably interferes with an employee's work performance.

(*Id.* at 12 (citing *Ramsey v. Henderson Postmaster Gen.*, 286 F.3d 264, 268 (5th Cir. 2002)).)

Defendant argues that there were only a few incidents that happened over a period of nineteen weeks. (*Id.* at 12–13.) Those incidents were not severe enough to constitute a hostile work

environment. (*Id.* at 13.) It lists several examples of hostile work environment claims that were rejected by the Fifth Circuit, saying that they were worse than the case here and still failed to meet the threshold. (*Id.*)

3. <u>Retaliation</u>

Defendant first says that there is no cause of action for retaliation under the LEDL. (*Id.* at 14–15 (citing *Monette v. Walgreen Co.*, No. 24-1272, 2024 WL 4528156, at *3 (E.D. La. Oct. 18, 2024)).)

Defendant then addresses Plaintiff's Title VII Retaliation claim, arguing that the facts pled do not amount to unlawful retaliation. (*Id.* at 15.) Again, it contends that Plaintiff has not shown that these actions were "materially adverse employment actions." (*Id.*) "[A]n employment decision tends to be 'materially adverse' when it changes 'job title, grade, hours, salary, or benefits' or effects a 'diminution in prestige or change in standing among . . . co-workers.' " (*Id.* at 16 (quoting *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023)).)

Looking to the "final decisionmaker," (*id.* (quoting *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002)), Defendant maintains that ordinary employees' actions are not imputed to the employer "unless they are conducted 'in furtherance of the employer's business,' " (*id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996)).) Further, the discriminatory conduct must be directly related to the business. (*Id.* (quoting *Long*, 88 F.3d at 306).)

Defendant asserts that, even if Plaintiff's allegations were true, they were actions by unknown individuals and not his employer. (*Id.*) It analyzes *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012). (*Id.*) In that case, the Fifth Circuit found that, because the harassment was committed by ordinary employees and not in furtherance of the business, it did not rise to the level of retaliation. (*Id.* at 16–17 (citing *Hernandez*, 670 F.3d at 657).) Defendant argues that

7

Plaintiff has not shown any retaliation by the Dairy itself, or by any workers on the Dairy's behalf, and thus he has failed to state a retaliation claim. (*Id.* at 17.)

### 4.  Constructive Discharge

Defendant argues that Plaintiff's retaliatory constructive discharge claim fails as well. (*Id.*) "To establish a claim of constructive discharge, Plaintiff must plead and prove that his working conditions were so intolerable as a result of unlawful harassment that a reasonable person in his position would have felt compelled to resign." (*Id.* (citing *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)).) Defendant points the Court to seven factors outlined by the Fifth Circuit:

> (1) demotion; (2) reduction in compensation; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on less favorable terms.

(*Id.* (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).)

Plaintiff's allegations only go to one of these factors, harassment. (*Id.* at 18.) The level of harassment must be higher than the minimum required to prove a hostile work environment claim, and Plaintiff has not met that burden. (*Id.* (citing *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 300–01 (5th Cir. 2001)).) Defendant argues that the three weeks between Plaintiff notifying Cox of the harassment and his resignation did not give Defendant a reasonable opportunity to remedy the issue. (*Id.* at 18–19.) It was not reasonable for Plaintiff to resign before allowing Defendant to fix the problem. (*Id.*) Therefore, Defendant argues that Plaintiff's claims should be dismissed.

### ii.    *Opposition* (Doc. 19)

Plaintiff argues that the document attached to the *Motion* (the EEOC Charge of Discrimination) should be stricken. (Doc. 19 at 5.) This attachment is not necessary to decide the

*Motion*. (*Id.*) Plaintiff asserts that Defendant is attempting to convert the *Motion* into a motion for summary judgment, which would be improper. (*Id.*)

### 1. Racial Discrimination

Plaintiff asserts that Defendant makes an "ultimate employment decision argument[,]" which was rejected in *Hamilton*. (*Id.* at 5–6 (citing *Hamilton*, 79 F.4th at 501–05).) Under the new rule, a plaintiff can succeed on a Title VII racial discrimination claim by showing "discrimination in the terms, conditions, or privilege of employment that did not involve a discharge, loss of pay, or other concrete effects on his or her employment status." (*Id.* at 6 (quoting *Hamilton*, 79 F.4th at 501) (internal quotation marks omitted).) Plaintiff claims that he has done this. (*Id.*)

### 2. Racial Harassment and Race-Based Hostile Work Environment

Plaintiff argues that the allegations in the *Complaint* are based on "direct evidence of racial animus due to race-based comments by his managers." (*Id.*) There are four factors to determine whether comments are direct evidence of racial animus or if they are "stray remarks": "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." (*Id.* at 6–7 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)).)

Watson's comments about Plaintiff's race and skin tone, excluding Plaintiff from the birthday party because of his skin tone, and the denial of a raise because he was Black were all connected to Plaintiff's race and are direct evidence of discrimination. (*Id.* at 7.) Plaintiff asserts that the actions shown by direct evidence need not be the sole basis for an adverse employment decision. (*Id.* at 7–8.) "[O]nce direct evidence is presented[,] the burden shifts to the employer to show by preponderance of the evidence the same decision would have been made without the

forbidden factor." (*Id.* at 8 (citing *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C*, 778 F.3d 473, 476–77 (5th Cir. 2015)).) Plaintiff cites two Fifth Circuit cases, where plaintiffs survived summary judgment with claims similar to those made in this case. (*Id.* (citing *Etienne*, 778 F.3d at 476–77; *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 331 (5th Cir. 1994)).)

Next, Plaintiff contends that the complained of conduct was severe and pervasive. (*Id.*) Rather than stray remarks or isolated incidents—as Defendant interprets them—Plaintiff faced "months of being called racial epithets, raise and promotion being denied, jobs being sabotaged, being excluded, and being threatened with physical violence and death." (*Id.* at 9.) Plaintiff says the cases cited by Defendant are distinguishable, because those cases dealt with a few instances over a long period of time, not many instances within a few months. (*Id.* at 10.) Further, many of Defendant's cases were from before the Fifth Circuit's decision in *Hamilton*, which marked a shift towards lower tolerance of "egregious behavior by employers." (*Id.* at 11.) Plaintiff asserts that because everyone at the Dairy ignored the egregious behavior he was enduring, it was severe and pervasive. (*Id.*)

### 3.  Retaliation

Plaintiff argues that he does not need to show a "materially adverse employment action" to successfully plead a retaliation claim. (*Id.* at 11–12.) In *Hamilton*, the Fifth Circuit expanded the definition of retaliatory employment actions to include actions that affect the terms and conditions of employment or the employment relationship. (*Id.* at 12 (citing *Hamilton*, 79 F.4th at 501–03).) Even if a materially adverse action were required, Plaintiff claims that his constructive discharge meets that standard. (*Id.*) He says that the other actions alleged in the *Complaint* constituted materially adverse employment actions because they dissuaded him from making a charge of discrimination. (*Id.* at 12–13.)

Plaintiff argues that there is a private right of action for retaliation under the LEDL despite the fact that the LEDL does not explicitly name retaliation as a cause of action. (*Id.* at 13.) Courts disagree as to whether the LEDL includes retaliation. (*Id.*) Plaintiff looks to principles outlined by the Supreme Court to support his argument. (*Id.*) He argues that the Supreme Court has said that all anti-discrimination statutes contain an anti-retaliation provision, whether explicitly stated or not. (*Id.* (citing *Gomez-Perez v. Potter*, 553 U.S. 474, 488 (2008)).) Plaintiff asserts that Louisiana Revised Statutes § 51:2256 provides for a cause of action for retaliation related to LEDL. (*Id.* at 13–14.) He says that it does not matter that he did not specifically name § 51:2256 in the *Complaint*, but requests leave to amend the *Complaint* if such citation is necessary. (*Id.* at 14.)

### 4. Constructive Discharge

"In order to establish *a prima facie* case of retaliation based on constructive discharge, a plaintiff must prove that working conditions would have been [so] difficult or unpleasant, a reasonable person in his shoes would have felt compelled to resign." (*Id.* (citing *Harville v. Westwood Commc'ns, LLC*, 33 F.3d 428, 439–40 (5th Cir. 2005)).) Plaintiff names the same factors outlined above:

> 1. Demotion; 2. Reduction of salary; 3. Reduction of Job Responsibility; 4. Reassignment to menial or degrading work; 5. Reassignment of work under younger supervisor; 6. Badgering, harassment or humiliation by employer calculated to encourage the employee's resignation; or 7. [O]ffers of early retirement or continued employment on terms less favorable to the employee's former status.

(*Id.* (quoting *Harvill*, 433 F.3d at 439–40).) "[T]he working conditions do not have to be purposely designed to force the employee to quit." (*Id.* (citing *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980)).) Plaintiff contends that the behavior he faced satisfied factor six, harassment. (*Id.* at 15.) No one would have continued working at the Dairy under these conditions.

(*Id.*) Therefore, Plaintiff says that his constructive discharge claim should survive the *Motion to Dismiss*. (*Id.*)

Plaintiff argues that he gave Defendant a reasonable opportunity to address the issues he was having. (*Id.*) He did not wait until September to report the harassment and discrimination. (*Id.*) Rather, he reported these incidents starting in July 2023. (*Id.*) He first went to the CEO on August 12, 2023. (*Id.*) Plaintiff asserts that nothing was done about his complaints, and he faced further harassment and bullying. (*Id.*) No investigation was commenced, and Plaintiff did not quit during an investigation. (*Id.* at 15–16.)

Plaintiff requests leave to amend his *Complaint*. (*Id.* at 16.) He wishes to add allegations of Defendant's policies regarding complaints and investigations, which was included in the EEOC position paper. (*Id.*)

### iii.    *Reply* (Doc. 22)

Defendant argues that the EEOC Charge attached to the *Motion* should not be stricken because it "will assist the Court in deciding the merits of Plaintiff's claims." (Doc. 22 at 1–2.) The EEOC charge

> makes no allegations of an "angry mob," of Mr. McQuiter's [sic] supposed unlawful conduct, that he made multiple reports of supposed harassment and discrimination to Sue Anne Cox ("Ms. Cox"), that he was told he would be "fired on the spot," that his life was threatened, or that he was threatened in the bathroom, as he does now.

(*Id.* at 2.) The EEOC charge further shows that Watson "is the same race as Plaintiff." (*Id.*) Defendant asserts that the EEOC charge is central to the *Motion to Dismiss* and determining the viability of Plaintiff's claims. (*Id.*) Further, no prejudice would result from the charge's inclusion. (*Id.*)

### 1.  Racial Discrimination

Defendant next addresses Plaintiff's interpretation of *Hamilton*. (*Id.* at 2–3.) While Defendant acknowledges that *Hamilton* did away with the ultimate employment decision requirement for Title VII disparate treatment claims, a plaintiff must still allege "workplace bias in hiring, firing, compensation, or terms, conditions, or privileges of his employment." (*Id.* at 3 (citing *Hamilton*, 79 F.4th at 497).) Defendant argues that Plaintiff has not pled any facts showing that he was treated differently than those outside his protected class, which was the case in *Hamilton*. (*Id.*) Defendant contends that Plaintiff's allegations are speculative, because he does not allege how his terms, conditions, or privileges of employment have been altered. (*Id.*)

### 2.  Race-Based Hostile Work Environment

Defendant says that Plaintiff failed to respond to its contention that certain allegations in the *Complaint* were not related to his race. (*Id.* at 4.) Therefore, Defendant argues, Plaintiff has conceded that the incidents are not valid bases for a race-based hostile work environment claim. (*Id.*) Plaintiff cannot not argue that his hostile work environment claims are related to race, because his claims about phone calls, being followed home, sabotaged work, and being confronted by a mob have nothing to do with his race. (*Id.* at 4–5.) Further, he did not allege facts linking the phone call and being followed home to Defendant or its employees. (*Id.*)

Defendant asserts that the incidents where Plaintiff was called a racial slur and a slave and where comments were made about his skin tone were teasing or simple comments. (*Id.* at 5.) They were even made by someone within Plaintiff's protected class, as Watson is biracial. (*Id.*) Plaintiff has not alleged how these comments affected his terms, conditions, or privileges of employment. (*Id.* at 6.) Therefore, his hostile work environment claim fails. (*Id.*)

3. Retaliation

Defendant argues that Plaintiff incorrectly applies the *Hamilton* standard to his retaliation claim. (*Id.*) *Hamilton* addressed adverse employment actions in discrimination cases, not Title VII retaliation cases. (*Id.* at 6–7.) The relevant standard is: "an adverse employment action, which is one that a reasonable employee would find materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (*Id.* at 7 (quoting *Hudson*, 58 F.4th at 231) (cleaned up).)

The *Complaint* fails to allege "that Plaintiff was dissuaded from making or supporting a charge of discrimination." (*Id.*) Plaintiff was not dissuaded by the alleged sabotage or confrontation by a mob because he went on to make another report to Cox about the behavior. (*Id.*) Likewise, Plaintiff did not allege that these actions were committed by Defendant or its employees. (*Id.*)

Defendant argues that some of the retaliatory actions alleged by Plaintiff occurred before he attempted to engage in protected activity. (*Id.*) Plaintiff did not engage in a protected activity—reporting the incidents to Cox—until August 22, 2023, and most of the alleged incidents happened before that date. (*Id.* at 7–8.) Even the alleged sabotage of Plaintiff's work is not alleged to have happened after he reported the harassment. (*Id.* at 8.)

Plaintiff was not engaging in protected activity when he informed Watson and McQuirter of the threatening phone calls and being followed home from work because these activities were not prohibited by Title VII. (*Id.*) Plaintiff's complaint about his lack of a pay raise was also not protected conduct just because he was told that he did not get the raise because he was Black. (*Id.*)

Defendant argues that Plaintiff's claim for retaliation under the LEDL fails because the LEDL does not provide for retaliation claims. (*Id.* at 8–9.) Although Plaintiff cited in the

14

*Opposition* Louisiana Revised Statutes § 51:2256—a statute prohibiting employers from conspiring to discriminate—Plaintiff did not allege a conspiracy. (*Id.* at 9.) Plaintiff should not be given leave to amend to allege this new claim "because it is untimely and prejudicial." (*Id.*)

### 4. Constructive Discharge

Defendant repeats its argument that many of Plaintiff's allegations do not rise to the level of severe or pervasive conduct. (*Id.*) "Here, Plaintiff conflates the alleged incidents of disparate treatment with harassment and assumes all this amounts to a constructive discharge." (*Id.*) Harassment alone is not enough to support a claim of constructive discharge. (*Id.* (citing *Lewis v. Eye Care Surgery Ctr., Inc.*, No. 21-475, 2023 WL 8880348, at *13 (M.D. La. Dec. 22, 2023) (Dick, C.J.)).)

Defendant concludes by saying that Plaintiff did not allege that the reports he made as early as July 2023 reported Title VII violations or that Defendant was made aware of these reports. (*Id.*) Plaintiff only gave Defendant fourteen business days from his first report to Cox until he resigned from his position. (*Id.* at 10.) It was not reasonable to expect a full resolution in that time. (*Id.*) Therefore, Defendant argues, Plaintiff's constructive discharge claim should be dismissed. (*Id.*)

### b. Law and Analysis

#### i. Documents Attached to *Motion to Dismiss*

"[M]otion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy[.]" *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962)). The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dep't of Homeland Sec.*, 441 F. App'x 246, 248 (5th Cir. 2011);

*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

The EEOC charge attached to the *Motion to Dismiss* was referred to in the *Complaint*. (Doc. 1 at 2.) The EEOC charge is central to Plaintiff's claim because (1) it is a procedural requirement to bring a Title VII suit, *see O'Neal v. Roadway Exp.*, 181 Fed. App'x 417, 419 (5th Cir. 2006), and (2) the claims in the *Complaint* must stem from the EEOC charge, *see Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). While the EEOC charge should not be stricken, the Court will exercise its discretion to not consider it, as there is no argument that Plaintiff's claims do not stem from the charge or that the *Complaint* was untimely.

### ii.    Title VII in General

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Title VII's prohibition against discrimination extends to protect against either 'a tangible employment action, such as a demotion or denial of promotion, or . . . a hostile or abusive working environment.' " *Johnson v. Bd. of Supervisors of La. State Univ.*, 90 F.4th 449, 455 (5th Cir. 2024) (citing *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 162 (5th Cir. 2007); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011)). "To establish a discrimination claim under Title VII . . . , a plaintiff must prove that he or she was subject to an 'adverse employment action[.]' " *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)).

"[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton*, 79 F.4th at 502–03 (citing 42 U.S.C. § 2000e-2(a)(1); *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)). While "the statutory phrase, 'terms, conditions, or privileges of employment,' is broad[,]" *id.* at 503, the Fifth Circuit has reiterated that Title VII "does not permit liability for de minimis workplace trifles[,]" *id.* at 505 (citing *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021); *Chambers v. D.C.*, 35 F.4th 870, 883, 890 (D.C. Cir. 2022); *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005)).

Plaintiff asserts his claims under Title VII and the Louisiana equivalent, the LEDL. (Doc. 1 at 4–7.) "As many courts have noted, it is well-settled that because of the substantial similarities between state and federal anti-discrimination laws, courts may appropriately consider interpretations of federal anti-discrimination statutes when construing Louisiana law." *Hughes v. Exec. Hotel Mgmt., Inc.*, No. 22-720, 2023 WL 11820085, at *2 (M.D. La. Sept. 11, 2023) (deGravelles, J.) (citing *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 712–13 (W.D. La. 2011); *Hicks v. Cent. La. Elec. Co. Inc.*, 97-1232 (La. App. 1 Cir. 5/15/98), 712 So. 2d 656, 658).

### iii.    Racial Harassment and Race-Based Hostile Work Environment

In order to plead a hostile work environment, a plaintiff must allege that "(1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action." *Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2024) (quoting *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022)). Here,

Defendant argues that Plaintiff has not sufficiently pled elements three and four. (Doc. 13-2 at 11–14.)

### 1.  Race-Based Harassment

Defendant argues that Plaintiff cannot rely on facially neutral actions to support his hostile work environment claim. (Doc. 13-2 at 11–12.) The sections on hostile work environment and harassment in the *Complaint* include actions that are not directly linked to Plaintiff's race: sabotaged work and being cornered by a mob. (Doc. 1 at 6.) In his *Opposition*, Plaintiff does not address how these actions can be attributed or are attributable to his race. (Doc. 19 at 6–8.) Therefore, the argument is waived. *JMCB, LLC v. Bd. of Comm. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. Aug. 23, 2018) (deGravelles, J.) ("[F]ailure to brief an argument in the district court waives that argument in that court.").

The remaining grounds of harassment—being called racial slurs, being denied a raise, and being excluded from a work event—were all linked to Plaintiff's race. (Doc. 1 at 6.) In each instance, Plaintiff alleges that Watson explicitly said these actions were being taken because Plaintiff was Black or made direct comments about Plaintiff's skin color. (*Id.* at 2–3.) Therefore, these incidents are based on Plaintiff's protected class (i.e., his race).

### 2.  Affecting a Term, Condition, or Privilege

"To affect a term, condition, or privilege of employment, the race-based harassment must have been 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Slaughter v. Torres*, 592 F. Supp. 3d 515, 528 (M.D. La. 2022) (deGravelles, J.) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "For harassment to alter the conditions of a person's employment, 'the conduct complained of

must be both objectively and subjectively offensive.' " *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1066 (5th Cir. 2023) (quoting *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)).

The Supreme Court has "directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)) (addressing a sexual harassment claim); *see also Arrendondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433–35 (5th Cir. 2023) (applying the same standards to hostile work environments based on sex and race). " '[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher*, 524 U.S. at 788 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Plaintiff claims that he was harassed during his time at the Dairy due to his skin color. (Doc. 1 at 6.) The harassment related to his race included: being called slurs, being denied a raise, and being excluded from work events. (*Id.*) Plaintiff alleges that the harassment was so severe and pervasive that it led to his constructive discharge. (*Id.*)

Plaintiff pleads that the harassing conduct was frequent. He began his employment at the Dairy on May 3, 2023. (Doc. 1 at 2.) The harassment began in July 2023. (*Id.*) Plaintiff's supervisor, Watson, called him a "black a__ n____," said Plaintiff's "skin was blue/black," and called Plaintiff a slave on multiple occasions. (*Id.*) On July 2023, Watson excluded Plaintiff from a birthday party for a fellow employee because he was "blacker than [Plaintiff's] bag." (*Id.* at 2–3.) On August 20, 2023, Plaintiff was denied a raise, which Watson said was because of his race.

(*Id.* at 3.) Plaintiff resigned on September 13, 2023. (*Id.* at 4.) This is far from one or two isolated incidents, and they happened in a short amount of time.

These incidents, when viewed together, are severe and humiliating. Plaintiff did not just endure comments; he says that his work was sabotaged and that he was threatened with bodily harm. (*Id.* at 3, 6.) While offhand comments are generally not enough to give rise to a hostile work environment claim, the Fifth Circuit has recognized that even one use of the N-word can be sufficiently severe to survive a motion to dismiss. *Woods v. Cantrell*, 29 F.4th 284, 286 (5th Cir. 2022). In *Woods*, the plaintiff's supervisor called him a "Lazy Monkey A__ N___" in front of other employees, which the Fifth Circuit found to be severe. *Id.* at 285–86. The court, quoting other circuits, said "[p]erhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as the N-word by a supervisor in the presence of his subordinates." *Id.* at 285 (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)) (cleaned up). While the use of the N-word is reprehensible, other district courts have interpreted *Woods* not to mean that a single use of a racial slur will "*ipso facto* create a hostile work environment[,]" but "that the use of a sufficiently derogatory term is a significant (but non-determinative) consideration . . . ." *Batiste v. City of Rayne*, No. 23-858, 2024 WL 3419030, at *3 (W.D. La. June 27, 2024), *report and recommendation adopted*, No. 23-858, 2024 WL 2417401 (W.D. La. July 15, 2024); *see also Merida v. Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E.*, No. 23-1992, 2024 WL 4252748, at *13 (E.D. La. Sept. 20, 2024).

Here, not only was Plaintiff called the N-word by his supervisor, in front of another supervisor, other comments were made about his skin color, and he faced threats. (Doc. 1 at 2–3.) Therefore, Plaintiff has pled that the harassment was severe and humiliating.

Finally, Plaintiff has sufficiently pled that the harassment interfered with his work. As mentioned above, even one use of the N-word by a supervisor can establish a hostile work environment. *Woods*, 29 F.4th at 285 ("The N-word has been further described as 'a term that sums up . . . all the bitter years of insult and struggle in America, [a] pure anathema to African-Americans, [and] probably the most offensive word in English.'" (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 588 (D.C. Cir. 2013) (Kavanaugh, J., concurring))). Plaintiff was also denied a raise. (*Id.* at 6.) Therefore, Plaintiff has claimed that the harassment interfered with his work.

Because Plaintiff has pled that the work environment at the Dairy was sufficiently severe or abusive, the *Motion to Dismiss* will be denied on this ground.

### iv.    Racial Discrimination

Although Plaintiff simply calls this count of his *Complaint* "Racial Discrimination," the claim seems to be one for disparate treatment. "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Plaintiff claims that he was denied a raise because of his race, could not attend a party because of his race, and was called racial epithets. (Doc. 1 at 4–5.) Therefore, the Court will evaluate his claim under the disparate treatment standard.

"In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco*, 448 F.3d at 787. "A plaintiff can prove discriminatory motive through either direct or circumstantial evidence." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Portis*, 34 F.3d at 328). While the distinction between direct and circumstantial evidence of discriminatory motive is important in determining whether to apply the *McDonnell Douglas* burden-shifting framework, it is not necessary to draw such a distinction here.

The Fifth Circuit has repeatedly recognized:

> the Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 [] (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

*Id.*

> "A district court therefore errs by requiring 'a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]' " *Id.* (quoting *Raj*, 714 F.3d at 331). The Fifth Circuit has also explained, however, "that, although plaintiffs do not 'have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [their] case plausible." *Id.* (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added)).

> . . .

> "If a plaintiff's disparate treatment claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. *Chhim*, 836 F.3d at 470. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim. *See, e.g., id.* at 470–71 (considering whether the plaintiff pleaded facts suggesting that the employer hired an applicant who was 'similarly situated' to the plaintiff or 'less qualified' than the plaintiff in accordance with the *McDonnell Douglas* framework)." [*Cicalese*, 924 F.3d at 767.]

*Mitchell v. Darling Ingredients, Inc.*, No. 20-889, 2022 WL 458397, at *6–7 (M.D. La. Feb. 4, 2022).

> To demonstrate a prima facie case of employment discrimination, [a plaintiff] must show that [he] (1) belongs to a protected class; (2) was qualified for the position; (3) experienced an adverse employment action; and (4) was similarly situated to other employees who were not members of [his] protected class and who were treated more favorably.

*Id.* at *6 (quoting *Smith v. Nautic Star, LLC*, No. 20-242, 2021 WL 2104634, at *3 (N.D. Miss. May 25, 2021)).

22

Because this is a 12(b)(6) motion, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.' " *Cicalese*, 924 F.3d at 767 (emphasis omitted) (citing, *inter alia*, *Raj*, 714 F.3d at 331; *Pacheco*, 448 F.3d at 787).

"[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton*, 79 F.4th at 502–03. The Supreme Court has said that to show an adverse employment action, "an employee must show 'some' harm with respect to an identifiable term or condition of employment, but the harm need not be significant, '[o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.' " *O'Brien v. Autozoners, LLC*, No. 23-793, 2024 WL 4838867, at *6 (E.D. La. Nov. 20, 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355–56 (2024)).

The Fifth Circuit said in *Hamilton*:

> The [Supreme] Court has held that an adverse employment action "need only be a term, condition, or privilege of employment." And it has been clear that a Title VII plaintiff may recover damages even for "discrimination in the 'terms, conditions, or privileges of employment' " that "did not involve a discharge," "loss of pay," or other "concrete effect on [his or her] employment status." Nor is Title VII's coverage "limited to 'economic' or 'tangible' discrimination." This is because Section 703(a)(1) "not only covers 'terms' and 'conditions' in the narrow contractual sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.' " Any "benefits that comprise the incidents of employment, or that form an aspect of the relationship between the employer and employees," the Court has explained, fall within Title VII's ban on discrimination.

*Hamilton*, 79 F.4th at 501–02 (internal citations omitted). The court went on to say:

> [W]e are mindful that the statutory phrase, "terms, conditions, or privileges of employment," is broad. As the Supreme Court has repeatedly stated, this language, while contractual in nature, "is not limited to 'economic' or 'tangible' discrimination," and "it covers more than 'terms' and 'conditions' in the narrow contractual sense." Indeed, the Court has held that even a discriminatory and hostile

> work environment—when sufficiently severe or pervasive—can rise to the level of altering the terms, conditions, or privileges of employment for Title VII purposes. . . . [T]he Court's elucidation of the statutory text in [the hostile-work-environment] context nonetheless informs our construction of the very same text for purposes of disparate-treatment claims.

*Id.* at 503 (internal citations omitted).

Plaintiff claims that he was called slurs and a slave, that comments were made about the color of his skin, and that he was denied a raise and excluded from a co-worker's birthday party because of his skin tone. (Doc. 1 at 4–5.) Defendant argues that—aside from his claims regarding pay—Plaintiff has not adequately pled either prong of the disparate treatment claim. (Doc. 13-2 at 6–8.) Plaintiff does not explain how his allegations rise to the level of adverse employment actions, says Defendant. (*Id.*; *see* Doc. 19 at 5–6.) When reading the *Complaint* as a whole, it is clear that Plaintiff claims that the harassment affected the terms or conditions of his employment.

Defendant concedes that the denial of a raise constitutes an adverse employment action for the purposes of this motion. (Doc. 13-2 at 7.) However, Plaintiff fails to adequately plead that he suffered any other disparate treatment. The instances of Plaintiff being called racial slurs or being excluded from a party are better addressed by a hostile work environment claim, which deals specifically with harassment. *See Clark*, 116 F.4th at 479. Plaintiff does not explain how the alleged discrimination affected terms and conditions of his employment and does not identify any terms and conditions that were affected.

Further, Plaintiff has not pled that he was qualified for his position or that similarly situated employees were treated better. While failing to plead these elements of the prima facie case does not necessarily defeat Plaintiff's claim on a motion to dismiss, failure to allege these can be helpful to determine if he has stated a claim. *Mitchell*, 2022 WL 458397, at *6–7. Therefore, Plaintiff's

claims for disparate treatment, besides those related to the denial of a raise, will be dismissed, though leave to amend will be given.

### v.    Retaliation

Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington*, 548 U.S. at 56 (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)); *see Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022). Where "a retaliation case is based on circumstantial evidence, [courts] apply the *McDonnell Douglas* framework." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). However, "a plaintiff only needs to plausibly 'allege facts going to the ultimate elements of the [retaliation] claim to survive a motion to dismiss.' " *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *4 (5th Cir. Oct. 8, 2024) (quoting *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)). "A plaintiff makes a prima facie case for retaliation by showing that '1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action.' " *Id.* at *6 (quoting *Wright*, 990 F.3d at 433). Defendant only disputes the second element, that Plaintiff suffered an adverse employment action. (Doc. 13-2 at 15.)

### 1.    Adverse Employment Action

At the pleading stage, a plaintiff need only make "two basic allegations: discriminatory conduct by the employer that leads to resignation of the employee." *Burchfield v. So. La. Med. Assocs.*, No. 23-1501, 2023 WL 5952183, at *8 (E.D. La. Sept. 13, 2023) (Vance, J.) (quoting

*Green v. Brennan*, 578 U.S. 547, 556 (2016)). Under Title VII, a constructive discharge is "tantamount to an actual discharge," so it constitutes an adverse employment action. *Green*, 578 U.S. at 555. Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649–50 (5th Cir. 2004).

Plaintiff argues that the harassment he suffered amounted to constructive discharge. (Doc. 19 at 15.) Here, Plaintiff claims that, after he reported the harassment to Cox, he was cornered by an angry mob and was constructively discharged. Plaintiff does not state what actions by Defendant contributed to his constructive discharge and does not link the actions of his co-workers to the Dairy. (Doc. 1 at 5.)

"The actions of ordinary employees are not imputable to their employer unless they are conducted 'in furtherance of the employer's business.' " *Hudson*, 58 F.4th at 231 (quoting *Hernandez*, 670 F.3d at 657). The actions of supervisors may be imputed to the employer "where the supervisory employees were agents of the employer with regard to the employment status of the plaintiff." *Long*, 88 F.3d at 306–07.

Plaintiff has not pled enough facts about who perpetrated the retaliation to determine if the acts are attributable to Defendant. He alleges that Watson was his supervisor but does not describe Watson's role in the Dairy or state that he had the authority to make decisions about Plaintiff's employment. (Doc. 1 at 3.) Plaintiff does not discuss the other employees who participated in the retaliation in detail and does not allege that any of their actions were taken in furtherance of the Dairy's business. Plaintiff did not identify many of the perpetrators whose actions would elevate the harassment to the level of retaliation. Further, Plaintiff did not respond to Defendant's argument that the alleged retaliatory actions could not be attributed to the Dairy. Plaintiff failed to

allege that the retaliatory actions were perpetrated by his employer or by employees whose actions could be attributed to the employer. Therefore, Plaintiff has failed to allege an adverse employment action attributable to Defendant and thus fails to state a retaliation claim. The *Motion* will be granted as to this claim, but leave to amend will be granted.

Plaintiff requests that he be given leave to amend his *Complaint* to add the allegation that Defendant's policies state that it must take corrective action within five days of a complaint. (Doc. 19 at 16.) Defendant does not address this amendment specifically, only asking that any amendments be limited to the scope of Plaintiff's EEOC charge. Therefore, Plaintiff will be given limited leave to amend and add this allegation, insofar as it supports his claim for retaliation through constructive discharge and does not add claims that do not reasonably grow out of the EEOC charge. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) ("In sum, a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.' ").

## 2.  Retaliation under LEDL

Previously, the LEDL did not provide for retaliation claims related to discrimination based on race, color, religion, sex and national origin. *Martin v. Winn-Dixie La., Inc.*, No. 13-682, 2015 WL 1281943, at *7. (M.D. La. Mar. 20, 2015) (deGravelles, J.) (citing *Smith v. Par. of Washington*, 318 F. Fupp. 2d 366, 373 (E.D. La. 2004)). Plaintiff's argument that the LEDL has an implied right of action for retaliation has been rejected by the Fifth Circuit. In *Glover v. Smith*, the Fifth Circuit held that the LEDL "does not contain its own retaliation provision" in the context of racial discrimination. 478 Fed. App'x 236, 243 (5th Cir. 2012) (quoting *Lowry v. Dresser, Inc.*, 04-1196 (La. App. 3 Cir. 2/2/05), 893 So. 2d 966, 967).

However, the Louisiana Human Rights Act includes a statute for retaliation which, as amended in 2014, includes the LEDL: Louisiana Revised Statutes § 51:2256. *Martin*, 2015 WL 1281943, at *7. This statute prohibits "conspiracy to violate human rights and discrimination laws." La. R.S. § 51:2256. There is some disagreement among federal district courts in Louisiana as to whether this statute requires an actual conspiracy. *Compare Lee v. City of Shreveport*, No. 21-3232, 2022 WL 2161941, at *5 (W.D. La. June 15, 2022); *DeJean v. Jefferson Par. Sheriff Off.*, No. 22-165, 2023 WL 3434986, at *3 (E.D. La. May 12, 2023); *Johnson v. Associated Wholesale Grocers, Inc.*, No. 18-5919, 2019 WL 1572485, at *8 (E.D. La. Apr. 11, 2019); *Martin*, 2015 WL 1281943, at *7 (not requiring conspiracy for a retaliation claim under the LEDL), *with Cook v. Par. of Jefferson*, 621 F. Supp. 3d 666, 673 (E.D. La. 2022); *Jones v. City of Monroe*, No. 19-832, 2019 WL 5488603, at *10 n.15 (W.D. La. Oct. 8, 2019) (holding that La. R.S. § 51:2256 requires a conspiracy). In *Horton v. ADM*, No. 22-668, 2023 WL 5663226, at *5 n.7 (M.D. La. July 21, 2023) (deGravelles, J.), this Court declined to answer the question of whether Louisiana Revised Statutes § 51:2256 requires a conspiracy because the Plaintiff's claim failed on other grounds. The Court will do the same here.

More specifically, the Court finds that Plaintiff fails to state a viable LEDL claim, regardless of whether the statute requires a showing of a conspiracy. If, as some courts have held, § 51:2256 does not require a conspiracy, Plaintiff has no viable LEDL retaliation claim because (a) Louisiana's anti-discrimination laws are generally interpreted the same as Title VII laws, and (b) Plaintiff fails to allege a Title VII retaliation claim. *Hughes*, 2023 WL 11820085, at *2. If, on the other hand, § 51:2256 requires a conspiracy, Plaintiff's claim fails because he did not adequately plead a conspiracy. The *Motion* will be granted on this issue, though Plaintiff will be given leave to amend.

28

## IV.    LEAVE TO AMEND

Plaintiff requests leave to amend "if the [C]ourt determines that there are not enough facts to support any of the causes of the action . . . ." (Doc. 19 at 2.) Considering that this is the first time the Court has ruled on a motion to dismiss the operative complaint, the Court agrees that Plaintiff should be given leave to amend under the circumstances.

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (citations omitted). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face

of a defective pleading whether the plaintiff actually can state a
claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, "the Court will act in accordance with the 'wise judicial practice' and general rule
and grant Plaintiff's request." *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 641–42
(M.D. La. 2018) (deGravelles, J.); *see also Fetty v. La. State Bd. of Private Sec. Exam'rs,* 611 F.
Supp. 3d 230, 250 (M.D. La. Jan. 31, 2020) (deGravelles, J.) ("[B]ecause Plaintiffs did not amend
their complaint in response to a ruling by this Court, and because of the above 'wise judicial
practice,' the Court will grant Plaintiffs one final opportunity to amend their complaint to state
viable claims against the Board Members.") (citing *JMCB*, 336 F. Supp. 3d at 641–42); *Murphy v.
Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.)
(citing, *inter alia*, *JMCB*, 336 F. Supp. 3d at 641–42) (reaching same result).

Failure to cure the deficiencies will likely result in the dismissal of Plaintiff's Title VII and
LEDL retaliation claims and disparate treatment claims from this Court. Specifically, if Plaintiff
fails to cure the deficiencies in his retaliation and disparate treatment claims outlined above, those
claims will be dismissed with prejudice. Although Plaintiff will be given leave to amend in light
of the "wise judicial practice" highlighted above, the Court cautions Plaintiff that, if he amends
the operative complaint to assert disparate treatment claims or retaliation claims under Title VII
and the LEDL, including any allegations about the Dairy's policies about internal investigations,
and the Court later determines that he did so frivolously, the Court will consider an award of
sanctions against Plaintiff under Federal Rule of Civil Procedure 11.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that *Defendant's Motion to Dismiss Brought Pursuant to Rule 12(b)(6)* (Doc. 13) filed by Kleinpeter Farms Dairy is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Motion* is **GRANTED** as to Plaintiff's disparate treatment claim, Title VII retaliation claim, and Louisiana Employment Law retaliation claim, and those claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-eight (28) days from the issuance of this Court's ruling on the *Motion to Dismiss* in which to cure the above-described deficiencies. If Plaintiff does not do so, the above three claims will be dismissed with prejudice.

**IT IS FURTHER ORDERED** that the *Motion* is **DENIED** on all other grounds.

Signed in Baton Rouge, Louisiana, on <u>October 7, 2025</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**