**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RONELL J. COMEAUX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-817-JWD-EWD** |
| **KLEINPETER FARMS DAIRY, LLC** | |

**RULING AND ORDER**

This matter comes before the Court on *Defendant's Motion to Dismiss Plaintiff's Amended Complaint* (the "*Motion*") (Doc. 31) filed by Kleinpeter Farms Dairy, LLC ("Defendant" or "the Dairy"). Plaintiff Ronell Comeaux ("Plaintiff" or "Comeaux") opposes the motion. (Doc. 33.) Defendant filed a reply. (Doc. 36.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the reasons stated below, the *Motion* is granted.

## I. Factual and Procedural Background

The factual allegations before the Court are mostly the same as those reviewed in the Court's *Ruling* on *Defendant's Motion to Dismiss Brought Pursuant to Rule 12(b)(6)*. (Doc. 13; Doc. 29.)[1] Plaintiff is an African American male, who began his employment as a dock worker at the Dairy on May 3, 2023. (Doc. 1 at ¶ 1; Doc. 29 at 2.) Around July 2023, the alleged harassment began. Plaintiff's supervisor Mr. Watson ("Watson") began calling Plaintiff racial epithets and making comments on his skin color. (Doc. 1 at ¶¶ 2–3; Doc. 29 at 2.) Plaintiff reported Watson's comments to another supervisor, Mr. McQuirter ("McQuirter"). (Doc. 29 at 2.)

[1] The *Amended Complaint* states that it cures the deficiencies noted in this Court's prior *Ruling* (Doc. 27) and that it "does not take the place of the Original Complaint." (Doc. 29 at 1.)

Plaintiff also received a threatening phone call (Doc. 1 at ¶ 5; Doc. 29 at 2), and he was followed by a gray Honda (Doc. 1 at ¶ 6; Doc. 29 at 3), excluded from Brian Stanford's ("Stanford") birthday party (Doc. 1 at ¶ 7; Doc. 29 at 3), denied a pay raise (Doc. 1 at ¶ 8; Doc. 29 at 3), accused of raping a co-worker (Doc. 1 at ¶ 9; Doc. 29 at 3), called a snitch (Doc. 1 at ¶¶ 11–12; Doc. 29 at 3), threatened with bodily harm (Doc. 1 at ¶ 11; Doc. 29 at 3), and confronted and surrounded. (Doc. 1 at ¶ 12; Doc. 29 at 3.) Additionally, Watson, McQuirter, Stanford, and Sue Ann Kleinpeter Cox ("Cox") sabotaged Plaintiff's work. (Doc. 1 at ¶¶ 11, 13; Doc. 29 at 3.) Plaintiff reported these incidents to McQuirter and Watson, who were supervisors and/or managers at the Dairy (Doc. 29 at 4), as well as to Cox, the Dairy's owner (Doc. 1 at ¶ 10; Doc. 29 at 4). (Doc. 1 at ¶¶ 5–6, 10, 13; Doc. 29 at 2–4.) Cox never discussed with Plaintiff any investigation into his claims. (Doc. 1 at ¶ 13; Doc. 29 at 3–4.) Plaintiff's employment at the Dairy ended on September 13, 2023. (Doc. 1 at ¶ 14.)

Plaintiff filed suit on October 1, 2024, in which he raised the following claims under Title VII of the Civil Rights Act of 1964 and Louisiana's Employment Discrimination Law ("LEDL"), Louisiana Revised Statutes § 23:332: racial discrimination/disparate treatment, retaliation and constructive discharge, racially hostile work environment, and racial harassment. (Doc. 1.) This Court dismissed Plaintiff's claims for disparate treatment (except as it relates to the denial of a pay raise) and retaliation. (Doc. 27 at 31.) The Court provided Plaintiff with leave to amend these claims, but the Court warned that failure to cure the deficiencies noted in the Court's *Ruling* would lead to dismissal with prejudice of the retaliation and disparate treatment claims. (*Id.* at 30.) Plaintiff filed his *Amended Complaint* on November 5, 2025, (Doc. 29) and Defendant now seeks to dismiss the Title VII and LEDL claims for disparate treatment and retaliation. (Doc. 31.)

## II. RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that

discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

## III. Discussion

### a. Title VII in General

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Title VII's prohibition against discrimination extends to protect against either 'a tangible employment action, such as a demotion or denial of promotion, or . . . a hostile or abusive working environment.'" *Johnson v. Bd. of Supervisors of La. State Univ.*, 90 F.4th 449, 455 (5th Cir. 2024). To establish a Title VII discrimination claim, "a plaintiff must prove that he or she was subject to an 'adverse employment action.'" *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

"[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton*, 79 F.4th at 502–03 (citing 42 U.S.C. § 2000e-2(a)(1); *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)). While "the statutory phrase, 'terms, conditions, or privileges of employment,' is broad," the Fifth Circuit has reiterated that Title VII "does not permit liability for de minimis workplace trifles." *Id.* at 503, 505.

Plaintiff asserts his claims under Title VII and the Louisiana equivalent, the LEDL. (Doc. 1 at 4–7.) "As many courts have noted, it is well-settled that because of the substantial similarities between state and federal anti-discrimination laws, courts may appropriately consider interpretations of federal anti-discrimination statutes when construing Louisiana law." *Hughes v.*

*Exec. Hotel Mgmt., Inc.*, No. 22-720, 2023 WL 11820085, at *2 (M.D. La. Sept. 11, 2023) (citing *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 712–13 (W.D. La. 2011); *Hicks v. Cent. La. Elec. Co. Inc.*, 97-1232 (La. App. 1 Cir. 5/15/98), 712 So. 2d 656, 658).

**b. Racial Discrimination**

As the Court previously explained, the claim referred to as "Racial Discrimination" seems to be one for disparate treatment discrimination. (Doc. 27 at 21.) "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Thus, the Court will evaluate this claim under the disparate treatment standard.

**i. Parties' Arguments**

**1. *Motion to Dismiss* (Doc. 31)**

Defendant claims the *Amended Complaint* raises the same allegations as the original *Complaint*. (Doc. 31-1 at 5.) The Court has already found these allegations, on their own, are insufficient to state a claim of race discrimination because they do not identify which terms and conditions of employment were affected or allege how they were affected. (*Id.*) The Court also previously found that Plaintiff did not plead that similarly situated employees were treated better. (*Id.*) The *Amended Complaint* "fails to cure these defects." (*Id.*)

First, Defendant argues that other than the denial of a pay raise, "Plaintiff fails to allege that the Dairy took any adverse employment action against him because of his race." (*Id.* at 5–6.) Plaintiff claimed that the alleged sabotage of his work could lead to disciplinary action, but he does not allege that he suffered any such disciplinary action. (*Id.* at 6.) Plaintiff also attempted to cure the defects by adding boilerplate language about conduct affecting terms and conditions of Plaintiff's employment and ultimately leading to constructive discharge. (*Id.*) These allegations

neither address "how the alleged discrimination affected terms and conditions of [Plaintiff's] employment" nor identify any "a term, condition, or privilege of employment" affected by Defendant's alleged actions. (*Id.* at 7.)

Second, "Plaintiff's allegations are insufficient to support a race-based constructive discharge claim as a matter of law." (*Id.* at 8.) "To establish a claim of constructive discharge, Plaintiff must plead and prove that his working conditions were so intolerable as a result of race-based unlawful harassment that a reasonable person in his position would have felt compelled to resign." (*Id.* at 8–9 (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)).) Neither the original *Complaint* nor the *Amended Complaint* alleges Plaintiff was demoted, had his responsibilities reduced, was assigned degrading work, was assigned to a younger supervisor, or was offered early retirement. (*Id.* at 9.) Plaintiff instead alleges "he was subjected to 'badgering, harassment by employer calculated to encourage the employee's resignation." (*Id.* (quoting Doc. 29 at ¶ 2).) However, the *Amended Complaint* does not suggest Defendant's alleged conduct was race related. (*Id.* at 10.) Furthermore, Plaintiff did not allege additional facts to address the Court's finding that "Plaintiff does not state what actions by Defendant contributed to his constructive discharge and does not link the actions of his co-workers to the Dairy." (*Id.* at 11 (quoting Doc. 27 at 26).)

Additionally, "[u]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." (*Id.* (quoting *Dhillon v. Lincare Inc. of Del.*, No. 06-1822, 2008 WL 2920259, at *12 (W.D. La. June 19, 2008)).) Plaintiff's resignation without allowing Defendant an opportunity to remedy the situation was "unreasonable as a matter of law and is fatal to his claim of constructive discharge." (*Id.* at 12.) Plaintiff alleges no facts showing his resignation was reasonable under the circumstances or that he had no choice

but to resign. (*Id.* at 12–13.) Therefore, "Plaintiff has not properly alleged a race-based constructive discharge claim." (*Id.* at 13.)

Third, "Plaintiff also failed to allege that a similarly situated comparator outside of his protected class was treated more favorably." (*Id.*) An employee claiming racial discrimination "must establish that [he] was treated less favorably than a similarly situated employee outside of [his] protected class in nearly identical circumstances." (*Id.* (quoting *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022)).) The comparator is not similarly situated if she and the plaintiff have different positions in the employment hierarchy, such as supervisor versus employee. (*Id.*) Plaintiff claims Stanford was a similarly situated employee who was treated better than Plaintiff. (*Id.* at 14 (quoting Doc. 29 at 2).) The *Amended Complaint*, however, alleges Stanford was a manager, and therefore, he cannot be a comparator to Plaintiff. (*Id.* at 14 (citing Doc. 29 at ¶ 5; *Willis v. Napolitano*, 986 F. Supp. 2d 738, 745 (M.D. La. Dec. 10, 2013)).) The *Amended Complaint* also fails to specify whether Stanford was outside of Plaintiff's protected class. (*Id.*) Furthermore, Plaintiff alleges no facts showing Stanford held a similar job, had the same supervisor, or was treated more favorably in nearly identical situations as Plaintiff. (*Id.*)

Accordingly, the *Amended Complaint* fails to state a claim for disparate treatment, and Plaintiff's racial discrimination claims under Title VII and the LEDL should be dismissed. (*Id.*) Plaintiff failed to cure the deficiencies noted in the Court's prior *Ruling*, despite the Court's warning that such a failure "will likely result in dismissal" with prejudice. (*Id.* at 20.) Therefore, any further leave to amend "would be both futile and prejudicial." (*Id.*)

**2. *Opposition* (Doc. 33)**

Plaintiff asserts, "All the actions alleged in the Complaint and Amended Complaint can be used to prove racial discrimination." (Doc. 33 at 7.) Federal pleading requirements do not require

"great detail regarding every little detail." (*Id.* (citing Fed. R. Civ. P. 8(a)).) Plaintiff claims Defendant impermissibly relies on "an ultimate employment decision argument." (*Id.* (citing *Hamilton*, 79 F.4th at 501–05).)

Plaintiff also argues the *Amended Complaint* clearly alleges that harassment caused his constructive discharge, which is an adverse employment action, and therefore, affected the terms and conditions of his employment. (*Id.* at 7–8 (citing Doc. 31 at 7; Doc. 29 at 2–4).) Plaintiff claims the terms and conditions of his employment were affected by the use of racial slurs, the threats, the exclusion from a party, the rape accusations, the sabotage, the "snitch" label, and by being followed by the Honda. (*Id.* at 9–10.) "[E]veryone including the owner turned a blinded [sic] eye to the egregious behavior which included threats of bodily harm and death." (*Id.* at 12.) Plaintiff claims his assertions about how the alleged harassment affected the terms and conditions of employment are not conclusory because "Plaintiff cited very specific acts with who, what and when clearly indicated." (*Id.* at 8 (citing Doc. 29 at 2–4).) He also "asserted that the harassment was so bad that it led to his constructive discharge." (*Id.* (citing Doc. 29 at 2–4).) Plaintiff argues he has "sufficiently alleged a race-based constructive discharge claim." (*Id.* at 12.)

Defendant argues that Plaintiff failed to allow Defendant to take remedial action and that his constructive discharge claim is therefore barred. (*Id.*) This argument is contrary to Defendant's own policy, which says Defendant "will respond in 5 days." (*Id.* (citing Doc. 29 at ¶ 6).) Thus, "[i]t seems unfair" to bar the constructive discharge claim when Plaintiff resigned after Defendant failed to respond for two to three weeks. (*Id.* (citing Doc. 29 at ¶ 6).)

Plaintiff further argues that he need not allege that a comparator received more favorable treatment because his allegations of two race-based comments directed at him are "direct evidence of racial animus." (*Id.* at 13 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir.

2001); *Etienne v. Spanish Lake & Casino Plaza, L.L.C.*, 778 F.3d 473, 476–77 (5th Cir. 2015); *Portis v. First Nat. Bank of New Albany, Ms.*, 34 F.3d 325, 331 (5th Cir. 1994)).) Additionally, the *Amended Complaint* named Stanford as a comparator.[2] (*Id.* at 14.) Plaintiff also stated other comparators were "to be identified during discovery" because he needs to conduct discovery to determine those individuals' names (*Id.* (quoting Doc. 29 at ¶ 3).) Therefore, the motion should be denied, and discovery should occur "to determine the validity of the claim and obtain evidence." (*Id.*)

**3. *Reply* (Doc. 36)**

Defendant argues that Plaintiff failed to explain how the "re-urged allegations of sabotaged work, being followed and harassed, being accused of rape and receiving a threatening phone call affected the terms and conditions of his employment." (Doc. 36 at 1 (citing Doc. 29 at ¶¶ 1(a)–(b)).) Plaintiff, therefore, concedes that these acts cannot support his disparate treatment claim, and the *Motion* should be granted on this basis alone. (*Id.*)

Plaintiff's assertion that Defendant is making an ultimate decision argument is incorrect. (*Id.* (citing *Hamilton*, 79 F.4th 494; Doc. 33 at 7).) Rather, Defendant's argument is that the *Amended Complaint* does not state how or if "Plaintiff suffered 'some harm' with respect to an identifiable term or condition of employment" due to the alleged discriminatory actions identified in the *Amended Complaint* at paragraphs 1(a)–(b). (*Id.* at 1–2 (citing Doc. 31-1 at 7–8).) Defendant asserts that Plaintiff's allegations are "trivial workplace conflicts or mere offhand comments" that occurred two months before Plaintiff's resignation. (*Id.* at 2.) The *Opposition* makes no contrary arguments. (*Id.*)

[2] Plaintiff denies stating Stanford was a manager. (Doc. 33 at 14.)

Plaintiff incorrectly asserts that he is required only to put Defendant on notice that he suffered an adverse employment action and that Defendant was put on notice that harassment can affect a term and condition of employment. (*Id.* at 2 (citing Doc. 33 at 7).) Plaintiff's allegations do not meet the plausibility standard because they are "conclusory assertions masquerading as factual conclusions." (*Id.* at 3.) Plaintiff's arguments do not overcome the arguments in the *Motion*. (*Id.*)

Plaintiff makes unsupported, conclusory assertions that he was harassed and that the harassment led him to resign from his job. (*Id.*) Plaintiff's "bare bones allegations" that the racial slurs, exclusion from a party, sabotage, and being called a snitch "collectively contributed to his constructive discharge" are insufficient to prove the high degree of harassment required to maintain a constructive discharge claim. (*Id.* at 4.) Additionally, the Court previously found the above-referenced factual allegations did not support a constructive discharge claim. (*Id.* (citing Doc. 33 at 9–10; Doc. 27 at 17–21).) The *Amended Complaint* offers no facts to warrant a different ruling, and the *Opposition* does not address how the amendment meets the pleading requirements for a constructive discharge claim. (*Id.*)

The *Opposition* also fails to negate the *Motion*'s argument that Plaintiff's resignation was unreasonable. (*Id.* at 3.) And Plaintiff did not show how the failure to respond within five days "reasonably grew out of his EEOC charge to support retaliation based on constructive discharge." (*Id.* (citing Doc. 27 at 31).)

Plaintiff's argument that he has presented direct evidence and thus, need not plead a comparator is misplaced. (*Id.* at 10–11.) At this stage, Plaintiff need not prove a prima facie case of discrimination, but he must plead sufficient facts on the ultimate elements to make his disparate treatment claim plausible. (*Id.* at 10 (quoting *Joshua Mitchell v. Darling Ingredients, Inc.*, No. 20-

889, 2022 WL 458397, at *6 (M.D. La. Feb 4, 2022)).) Therefore, he must allege sufficient facts showing he received less favorable treatment than a similarly situated employee outside of his protected class. (*Id.* at 11.)

Plaintiff also contends that he properly alleged Stanford as his comparator. (*Id.* (citing Doc. 33 at 14).) But Plaintiff does not indicate how he and Stanford are similarly situated. (*Id.*) Plaintiff further contends he identified other comparators "to be identified during discovery" because he did not know their names. (*Id.* (quoting Doc. 33 at 14).) However, Plaintiff does not allege facts showing Stanford or the unnamed individuals were outside of his protected class, "held similar jobs, had the same supervisor," or were treated "more favorably than Plaintiff in nearly identical situations." (*Id.*) The *Amended Complaint* fails to state a disparate treatment claim. (*Id.*)

**ii. Law and Analysis**

As the Court explained in its prior *Ruling*, Plaintiff must plead two ultimate elements to support a Title VII disparate treatment claim to survive a Rule 12(b)(6) motion: "(1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Cicalese v. University of Tex. Medical Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (emphasis omitted).

"[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton*, 79 F.4th at 502–03. The Supreme Court has said that to show an adverse employment action, "an employee must show 'some' harm with respect to an identifiable term or condition of employment, but the harm need not be significant, '[o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.'" *O'Brien v. Autozoners, LLC*, No. 23-793, 2024 WL 4838867, at *6 (E.D. La. Nov. 20, 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355–56 (2024)).

The Court previously held that Plaintiff failed to adequately plead that he suffered any disparate treatment other than the denial of a raise. (Doc. 27 at 24.) The Court found that the instances of Plaintiff being called racial slurs or being excluded from a party are better addressed by a hostile work environment claim. (*Id.*) The *Amended Complaint* makes conclusory allegations that Plaintiff allegedly being sabotaged, followed, harassed, threatened, and accused of rape "affected his terms and conditions of employment" and "ultimately led to his constructive discharge." (Doc. 29 at 1–2.) Plaintiff's allegations that these acts created an environment that he could not work in and could have resulted in disciplinary action (*id.*) are conclusory and need not be accepted as true. Neither the *Complaint* nor the *Amended Complaint* explains how the alleged discrimination affected terms and conditions of his employment, nor does either identify any term or condition that was affected.

Further, Plaintiff has not adequately pled that similarly situated employees were treated better. Plaintiff asserts that "a comparator is unnecessary" because he has put forth direct evidence of racial animus. (Doc. 33 at 13 (citing *Wallace*, 271 F.3d at 222; *Etienne*, 778 F.3d at 476–77; *Portis*, 34 F.3d at 331).) The Court has reviewed the cases Plaintiff cited in support, and none of them stand for the proposition that direct evidence renders a comparator unnecessary. Additionally, as the Court previously explained, it is not necessary to distinguish between direct and circumstantial evidence at this stage in the litigation. (Doc. 27 at 21–22.) "While the distinction between direct and circumstantial evidence of discriminatory motive is important in determining whether to apply the *McDonnell Douglas* burden-shifting framework, it is not necessary to draw such a distinction here." (*Id.* at 21.) The framework "can be 'helpful to reference'" when determining "whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim," but the *McDonnell Douglas* framework is an evidentiary standard that is distinct

from the pleading requirements for surviving a Rule 12(b)(6) motion. (*Id.* at 22 (quoting *Mitchell v. Darling Ingredients, Inc.*, No. 20-889, 2022 WL 458397, at *6–7 (M.D. La. Feb. 4, 2022); *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019)).) Thus, Plaintiff's argument regarding direct evidence is unavailing at this stage in the litigation.

Furthermore, while failing to plead the existence of a comparator does not necessarily defeat Plaintiff's claim on a motion to dismiss, this failure can be helpful to determine if he has stated a claim. *Mitchell*, 2022 WL 458397, at *6–7. The *Amended Complaint* makes the conclusory assertion, "The following similarly situated employees were treated better than the Plaintiff, Brian Stanford and others to be discovered during discovery." (Doc. 29 at 2 (citing Doc. 27 at 24).) Though Plaintiff denies stating Stanford was a manager and insists he is a comparator to Plaintiff (Doc. 33 at 14), Plaintiff is incorrect. The *Amended Complaint* alleges Plaintiff was a dock worker (Doc. 29 at ¶ 3) while Stanford was a manager and a supervisor. (*Id.* at ¶¶ 5(a)–(b).) Moreover, Plaintiff pleads no facts showing Stanford or the unnamed other employees were similarly situated employees. Thus, the factual allegations in the *Amended Complaint* do not establish a similarly situated employee was treated better than Plaintiff.

Plaintiff argues "discovery should be conducted" to ascertain the names of the unnamed alleged comparators because "he did not know some of the names of individuals." (Doc. 33 at 14.) Plaintiff cites no legal support for this argument. An argument that suitable comparators "could be identified if the case proceeded to discovery is unavailing" because a plaintiff "cannot simply rely on vague assertions with the unsubstantiated hope that discovery will later vindicate them." *Thornton v. Univ. of Texas Sw. Med. Ctr. Sch. of Med.*, No. 24-10594, 2025 WL 619166, at *4 (5th Cir. Feb. 26, 2025) (per curiam) (unpublished) (quoting *Zinnah v. Lubbock State Supported Living Ctr.*, No. 23-10242, 2023 WL 7314350, at *2 (5th Cir. Nov. 6, 2023)). *See Rountree v.*

*Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit."). Plaintiff failed to allege facts to support his claims that the unnamed individuals were comparators. As Defendant correctly states, "Plaintiff does not allege that there were other individuals outside of his protected class (regardless of name) who held similar jobs, had the same supervisor, and who were treated less favorably than Plaintiff in nearly identical circumstances." (Doc. 36 at 11.) Because "Rule 8's pleading standard 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions,'" the Court finds no merit in Plaintiff's argument that discovery should occur so he can find a comparator. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 729 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678–79).

Therefore, Plaintiff's claims for disparate treatment, other than those related to the denial of a raise, will be dismissed. The Court previously warned Plaintiff that a failure to cure the previously identified deficiencies in his disparate treatment claims would result in dismissal of those claims with prejudice. (Doc. 27 at 30.) Accordingly, leave to amend will not be given.

**c. Retaliation**

**i. Parties' Arguments**

**1. *Motion to Dismiss* (Doc. 31)**

Defendant argues the *Amended Complaint*'s allegations of retaliatory conduct are the same as those in the original *Complaint*. (Doc. 31-1 at 15.) None of the alleged acts are a materially adverse employment action that is attributable to Defendant. (*Id.*) Ordinary employees' actions are not imputable to their employer unless there is a "direct relationship between the allegedly discriminatory conduct and the employer's business." (*Id.* at 15–16 (quoting *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996)).) This Court previously found Plaintiff's allegations

insufficient to state a retaliation claim because "Plaintiff failed to allege that the retaliatory actions were perpetrated by his employer or by employees whose actions could be attributed to the employer." (*Id.* at 16 (quoting Doc. 27 at 27).) The *Amended Complaint* raises the same allegations from the original *Complaint* regarding Watson's treatment of Plaintiff and "offers no new facts to show that Watson took these actions in furtherance of the Dairy's business." (*Id.* at 16–17.) Though Plaintiff alleges Watson is a manager, the Court already found this allegation, alone, was insufficient to impute his conduct to the Dairy. (*Id.*)

Plaintiff does not allege facts that establish that any conduct engaged in by the alleged bad actors, including McQuirter, Stanford, and Cox, was done in furtherance of Defendant's business. (*Id.*) And it is not sufficient "for Plaintiff to allege that McQuirter and Stanford were managers and that Cox 'is the owner'" or for Plaintiff to assert that the conduct is attributable to Defendant "merely because it 'took place within the course and scope of employment.'" (*Id.* (quoting Doc. 29 at ¶ 5(b).) Plaintiff does not allege how each alleged bad actor sabotaged his work, who directed the sabotage, and what consequences Plaintiff suffered. (*Id.*) Nor does he explain how sabotaging pallets of milk or altering invoices was in furtherance of Defendant's business. (*Id.*) Additionally, Plaintiff neither specifies who called him a snitch or who followed him in the gray Honda. (*Id.* at 18 (citing Doc. 29 at 3).) Plaintiff, therefore, "has failed to plead specific facts to show that the alleged retaliatory conduct can be attributable" to Defendant, and the retaliation claims fail. (*Id.*)

To the extent Plaintiff alleges that his alleged constructive discharge was a materially adverse employment action resulting from allegedly retaliatory conduct, Defendant asserts that Plaintiff has not stated which of Defendant's actions contributed to his constructive discharge nor has he linked other employees' actions to Defendant. (*Id.*) Plaintiff has not alleged sufficient facts for the Court to determine whether Plaintiff's resignation was reasonable under the circumstances

or that under the circumstances, he had no other choice but to resign. (*Id.* (citing *Edwards v. Smitty's Supply, Inc.*, No. 15-3223, 2016 WL 3667361 (E.D. La. July 11, 2016)).) Plaintiff has failed to state a retaliation claim pursuant to either Title VII or the LEDL.

Plaintiff also did not cure the deficiencies specific to the LEDL retaliation claim. (*Id.* at 19.) Plaintiff has adequately pled neither a Title VII retaliation claim nor a conspiracy pursuant to Louisiana Revised Statutes § 51:2256. (*Id.*) "Plaintiff maintains that his retaliation claim is brought pursuant to La. R.S. 23:332," but the LEDL only recognizes retaliation under § 2256. (*Id.*) Plaintiff's LEDL retaliation claim must be dismissed. (*Id.*)

Plaintiff's retaliation claims should be dismissed with prejudice. (*Id.* at 20.) He failed to cure the deficiencies noted in the Court's Ruling, despite the Court's warning that such a failure "will likely result in dismissal" with prejudice. (*Id.*) Therefore, any further leave to amend "would be both futile and prejudicial." (*Id.*)

**2. *Opposition* (Doc. 33)**

Plaintiff argues the constructive discharge arguments from the racial discrimination section also apply here. (Doc. 33 at 14.) Plaintiff claims "Defendant clearly contradicts itself" because it argues the *Complaint* did not identify harassers but then Defendant names Watson as the perpetrator. (*Id.* (citing Doc. 31 at 14–16).) "That argument seems to fail." (*Id.*)

Defendant's argument that the discriminatory conduct must be directly related to the employer's business must fail. (*Id.*) "[E]mployers are responsible for all actions of their employees, especially if the actions of their employees are brought to the employer's attention and they fail to take prompt remedial action." (*Id.* at 15 (citing *Long*, 88 F.3d at 306).) The *Amended Complaint* claims several supervisors' actions were "in furtherance of Defendant's business, trying to get rid of Plaintiff through constructive discharge." (*Id.* (citing Doc. 29 at ¶ 5).) Plaintiff brought

Watson's harassment to upper management's attention, so Defendant is responsible. (*Id.*) Additionally, Plaintiff alleged that Defendant's failure to investigate within five days violated Defendant's policy. (*Id.*) "Explanations are for summary judgment, when legitimate non-discriminatory reason and pretext are considered, after discovery is completed and evidence produced, not for 12(b)(6) motions." (*Id.* (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Iqbal*, 556 U.S. at 678).)

Plaintiff claims the above arguments about Title VII retaliation also apply to his LEDL retaliation claim. Referring to his prior *Opposition* (Doc. 19), Plaintiff argues that *Gomez-Perez v. Potter* "makes it clear that Louisiana has a retaliation provision." (*Id.* at 15–16 (citing 553 U.S. 474, 478 (2008)).) Plaintiff requests that discovery occur before the Court dismisses any claims because the *Complaint* "puts the Defendant on notice and alleges sufficient facts to proceed." (*Id.* at 16 (citing Fed. R. Civ. P. 8).)

**3. *Reply* (Doc. 36)**

Defendant argues Plaintiff has failed to address this Court's prior finding that "Plaintiff failed to allege that the retaliatory actions were perpetrated by his employer or by employees whose actions could be attributed to the employer." (Doc. 36 at 11–12 (quoting Doc. 27 at 27).) Instead, the *Opposition* claims Plaintiff "is not required to allege facts establishing any connection between the alleged acts of retaliation and his employer." (*Id.* at 12.) But this Court "directed Plaintiff to allege facts sufficient to show that the alleged perpetrators were not ordinary employees and that the alleged perpetrators had sufficient 'authority to make the decisions to discipline, hire, and fire'" subordinates. (*Id.* (quoting *Long*, 88 F.3d at 306).)

A low-level employee's actions typically are not imputable to the employer, but a supervisory employee's decision is often in furtherance of the employer's business. (*Id.* (quoting

*Long*, 88 F.3d at 306–07).) Plaintiff failed to follow the Court's instructions and neither alleged that Watson had final authority over Plaintiff's employment status nor identified any individual "who had final authority to make relevant decisions regarding his employment." (*Id.* at 12–13.) Plaintiff's allegation that Watson, McQuirter, and Stanford were managers and that Cox is the owner "do not establish that any of these individuals was a final decision-maker with respect to employment decisions impacting Plaintiff." (*Id.* at 13.) Plaintiff has offered no facts establishing who had final authority over Plaintiff and what authority they exercised. (*Id.*) Additionally, he has not alleged how these individuals' conduct was in furtherance of the employer's business. (*Id.* (quoting *Long*, 88 F.3d at 306).) Plaintiff, therefore, has failed to plead specific facts attributing the alleged retaliatory conduct to Defendant, so he has not sufficiently pled a materially adverse employment action. (*Id.*) Plaintiff's Title VII and LEDL retaliation claims fail. (*Id.*)

Plaintiff cites a Supreme Court case to support his claim that "Louisiana has a retaliation provision." (*Id.* (citing *Gomez-Perez*, 553 U.S. at 478).) However, the cited case does not discuss Louisiana law. (*Id.* at 14.) "The LEDL does not recognize a cause of action for retaliation, unless Plaintiff pleads facts to support a claim under La. R.S. 51:2256." (*Id.* (citing *Monette v. Walgreen Co.*, No. 24-1272, 2024 WL 4528156, at *3 (E.D. La. Oct. 18, 2024); *Lowry v. Dresser, Inc.*, 2004-1196 (La. App. 3 Cir. 2/2/05), 893 So. 2d 966, 967).) Plaintiff has not complied with this Court's order to either "adequately plead a Title VII retaliation claim" or "adequately plead a conspiracy pursuant to La. R.S. 51:2256." (*Id.*) Therefore, Plaintiff's LEDL retaliation claim must be dismissed. (*Id.*)

**ii. Law and Analysis**

Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a

charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (brackets in original) (quoting 42 U.S.C. § 2000e-3(a)); *see Saketkoo*, 31 F.4th at 999. "[A] plaintiff only needs to plausibly 'allege facts going to the ultimate elements of the [retaliation] claim to survive a motion to dismiss.'" *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *4 (5th Cir. Oct. 8, 2024) (quoting *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)). "A plaintiff makes a prima facie case for retaliation by showing that '1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action.'" *Id.* at *6 (quoting *Wright*, 990 F.3d at 433). Defendant argues none of the acts alleged in the *Amended Complaint* are a materially adverse employment action attributable to Defendant. (Doc. 31-1 at 15.)

At the pleading stage, a plaintiff claiming an adverse employment action need only make "two basic allegations: discriminatory conduct by the employer that leads to resignation of the employee." *Burchfield v. So. La. Med. Assocs.*, No. 23-1501, 2023 WL 5952183, at *8 (E.D. La. Sept. 13, 2023) (quoting *Green v. Brennan*, 578 U.S. 547, 556 (2016)). Under Title VII, a constructive discharge is "tantamount to an actual discharge," so it constitutes an adverse employment action. *Green*, 578 U.S. at 555. Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649–50 (5th Cir. 2004).

"The actions of ordinary employees are not imputable to their employer unless they are conducted 'in furtherance of the employer's business.'" *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012)). The actions of supervisors may be imputed to the employer "where the supervisory employees

were agents of the employer with regard to the employment status of the plaintiff." *Long*, 88 F.3d at 306–07.

Plaintiff again argues that the harassment he suffered amounted to constructive discharge. (Doc. 33 at 8.) The *Amended Complaint* repeats factual allegations nearly identical to those that the Court considered in its prior *Ruling* on the retaliation claims. (*Compare* Doc. 29 at 2–4 *with* Doc. 1 at ¶¶ 2, 5–13.) Though Plaintiff alleges Watson, McQuirter, Stanford, and Cox are supervisors (Doc. 29 at ¶ 5(b)), Plaintiff again "does not describe [their] role[s] in the Dairy or state that [they] had the authority to make decisions about Plaintiff's employment." (Doc. 27 at 26.) The *Amended Complaint* does not identify or discuss in detail the other employees who allegedly participated in the retaliation.

Additionally, Plaintiff does not plausibly allege facts that would attribute the alleged retaliation to the Dairy. The *Amended Complaint* includes conclusory allegations on this issue, such as "any action taken by [Watson, McQuirter, Stanford, and Cox] to constructively discharge Plaintiff was in furtherance of Defendant's business"; Watson, McQuirter, Stanford, and Cox "failed to take prompt remedial action when Plaintiff engaged in protected activity"; Defendant "empowered the supervisors to take tangible employment actions" and is vicariously liable for their actions; and "all the actions taken against the Plaintiff took place within the course and scope of employment." (Doc. 29 at 4.) These allegations are Plaintiff's response to the Court's finding that the original *Complaint* did not plead enough facts to plausibly allege that Defendant, or employees whose actions could be attributed to Defendant, perpetrated the retaliatory actions. (*Id.* (citing Doc. 27 at 26–27).) Once again, "Plaintiff failed to allege that the retaliatory actions were perpetrated by his employer or by employees whose actions could be attributed to the employer." (Doc. 27 at 26–27.) Therefore, the *Amended Complaint* does not plausibly plead a retaliation claim.

The Court's prior *Ruling* found Plaintiff failed to state a viable LEDL retaliation claim because he failed to allege a Title VII retaliation claim and, if a conspiracy is required for a LEDL retaliation claim, Plaintiff did not plead a conspiracy. (Doc. 27 at 28.) As discussed above, Plaintiff has once again failed to plausibly plead a Title VII retaliation claim. And Plaintiff has not denied Defendant's claim that the *Amended Complaint* failed to include factual allegations related to a conspiracy. (*See* Doc. 31-1 at 19.) Accordingly, the *Motion* will be granted on this issue. The Court previously warned Plaintiff that a failure to cure the previously identified deficiencies in his retaliation claims would result in dismissal of those claims with prejudice. (Doc. 27 at 30.) Accordingly, leave to amend will not be given.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that *Defendant's Motion to Dismiss Plaintiff's Amended Complaint* (Doc. 31) filed by Defendant Kleinpeter Farms Dairy, LLC is **GRANTED**. Plaintiff Ronell Comeaux's claims for disparate treatment—other than those related to the denial of a raise—and retaliation, brought pursuant to Title VII and Louisiana's Employment Discrimination Law, are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 16, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**